UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JULEE A., :
        Plaintiff, :
         :
        v. : C.A. No. 23-209MSM
         :
MARTIN O'MALLEY, :
Commissioner of Social Security, :
        Defendant. :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 30, 2019, Plaintiff Julee A., a "younger" individual, applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff had graduated from high school and has worked at a supermarket as a meat wrapper and as a Certified Nursing Assistant ("CNA") in nursing homes and doing home care.[1] Tr. 80, 82-86. Claiming onset on September 6, 2018, with a date-last-insured of June 30, 2023, Plaintiff's application alleges that she has been disabled by symptoms resulting from ulcerative colitis confined to the rectum, inflammatory bowel disease ("IBD"), fatty liver, anxiety, depression, and acid reflux. At Step Two, an administrative law judge ("ALJ") found that only IBD amounts to a severe impairment. Tr. 14. The ALJ also considered other conditions[2] for which Plaintiff sought medical treatment and found that none are severe at Step Two. Id. Considering all of Plaintiff's symptoms, both those caused by IBD (also referred to as Crohn's) and those caused by the non-severe impairments, the ALJ found that Plaintiff retained

---

[1] Plaintiff also worked after onset in 2018 doing home care until she was diagnosed with Crohn's disease in 2019. Tr. 80, 84. During the hearing, the ALJ stated that he would not consider this last job as potential past relevant work. Tr. 84.

[2] These conditions relate to Plaintiff's left shoulder, knees, headaches, depression and obesity. Tr. 14-16.

the RFC[3] to perform light work with exertional limits (no more than six hours per workday of standing, walking or sitting) and postural limits (impacting the ability to climb ramps, stairs, ladders, ropes and scaffolds).  Tr. 18-22.  In reliance on a vocational expert who opined that Plaintiff could still do her past relevant CNA home care work (as performed), as well as, in the alternative, that Plaintiff's RFC permitted her to perform other work, the ALJ found that Plaintiff was not disabled at any relevant time.  Tr. 22-24.

Now before the Court is Plaintiff's motion for reversal of the decision of the Commissioner denying her SSI/DIB applications.  She contends that the ALJ's RFC is tainted by error because the ALJ failed to account for her need for frequent, extended, urgent and unscheduled bathroom breaks; that the ALJ's Step Four and Step Five findings are tainted because the ALJ erred in relying on "home care" as past relevant work and because his alternative finding that other work is available is impermissible as a matter of law and must be ignored; and that the Appeals Council committed egregious error in finding that a new CT brain scan interpreted as potentially reflecting hemorrhage nevertheless "does not show a reasonable probability that it would change the outcome of the decision."  ECF No. 9 at 11-24.  Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 13.  The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do

---

[3] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30.  The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31.  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez, 647 F.2d at 222).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).  If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits.  Sacilowski v. Saul, 959 F.3d 431, 440-41 (1st Cir. 2020); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505(a).[4]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI and DIB claims).

---

[4] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set of these regulations.

### B.     Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  Id. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5859 (Jan. 18, 2017).  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

### C.     Evidence Submitted to Appeals Council

The Appeals Council must review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).  To find Appeals Council error, the Court must consider whether the

Appeals Council's stated reason for declining review is a serious mistake or egregious error. Harlen David O. v. Berryhill, C.A. No. 18-17WES, 2019 WL 2501884, at *14 & n.21 (D.R.I. Feb. 13, 2019), adopted by Text Order (D.R.I. Mar. 18, 2019); Larocque v. Barnhart, 468 F. Supp. 2d 283, 286-87 (D.N.H. 2006). In this Circuit, a challenge to the Appeals Council's decision faces the high bar set by Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001), which holds that the decision should be afforded "a great deal of latitude" and "great deference." Id. at 5-7; see Cookson v. Colvin, 111 F. Supp. 3d 142, 149 (D.R.I. 2015). However, if egregious error taints the Appeals Council's determination that the new evidence does not "show there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision," Catherine I. v. Saul, C.A. No. 19-394WES, 2020 WL 2730907, at *10 (D.R.I. May 26, 2020) (internal quotation marks omitted), adopted by Text Order (D.R.I. June 18, 2020), remand is required for further consideration by the ALJ, even though he did not make "a mistake" in ignoring evidence that was never presented to him. Mills, 244 F.3d at 5-6. If the supplementary evidence is starkly inconsistent with the ALJ's determination and undermines it, the Appeals Council's denial of review constitutes an egregious mistake. Catherine I., 2020 WL 2730907, at *10.

### III.   Analysis and Recommendation

#### A.   Plaintiff's Claimed Need for Frequent, Extended and Urgent Bathroom Breaks

Plaintiff's challenge to the ALJ's RFC is based on the decision to discount her statements and testimony on application that she suffered from fecal urgency so severe that she unexpectedly must rush to a bathroom four to five times a day for ten to twenty minutes, beyond the three normal breaks in a normal workday, as well as that once a week she has a fecal accident/incontinence episode that requires forty-five minutes or more for cleanup. Tr. 92-93.

6

Plaintiff argues that the ALJ simply ignored this evidence. In support of this argument, Plaintiff cites Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 382, 389 (4th Cir. 2021) (remand required because, despite medical opinion from treating physician supporting claimant's statement, ALJ failed to analyze whether RFC was impacted by need to work near a restroom and take frequent bathroom breaks), and Kimberly F. v. Kijakazi, No. 2:22-CV-00365, 2023 WL 2878815, at *4, 9-10 (S.D.W. Va. Feb. 23, 2023) (remand required despite lack of medical opinion from treating source because ALJ's decision failed even to mention testimony regarding diarrhea and need for numerous bathroom breaks throughout the day), adopted sub nom. Fleck v. Kijakazi, No. 2:22-cv-00365, 2023 WL 2872541 (S.D.W. Va. Apr. 10, 2023). ECF No. 9 at 11-12, 16-17. Plaintiff contends that judicial review of this extensive record will compel the conclusion that a reasonable mind could not accept the ALJ's decision as adequate to support his conclusion. ECF No. 9; see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

      There is no question that, as the ALJ found, the record reflects that Plaintiff has experienced "chronic fecal urgency," as well as abdominal pain and rectal bleeding, since 2017, well prior to her alleged onset of disability (when she was working as a meat wrapper in a supermarket, Tr. 14, 117). Tr. 19. In October 2018, treating records from Lifespan indicate that Plaintiff was under the care of a gastroenterologist, Dr. Laura Massa. Tr. 584. With treatment, by January 2019, Dr. Massa noted that Plaintiff was reporting two to three movements a day with no fecal incontinence. Tr. 573; see also Tr. 568 (in March 2019, Dr. Massa notes movements two to three times a day; no fecal incontinence). By June 2020, Dr. Massa noted that, despite a delay of IBD treatment and the use of NSAIDs due to Plaintiff's shoulder issue, Plaintiff reported no bleeding or abdominal pain, with only "some loose stools w/ urgency post-prandially." Tr. 743-44. Dr. Massa's treating notes do not reflect any complaint of, treatment

7

for or restrictions based on the urgent need to use the bathroom for up to twenty minutes three or four times over a working day, in addition to the three normal workday breaks, that is, a total of six to seven times over an eight-hour period, with fecal accidents/incontinence once a week. Nor does the record suggest that such a symptom arose as an issue limiting Plaintiff's activities, such as her vacation in Florida in September 2018, Tr. 415, 417; her "trip" with a friend in October 2019, Tr. 939, 943; her weekend camping trip in July 2020, Tr. 724, 728; her being "on her feet for many hours" during "her daughter's [June 2021] graduation party," Tr. 879, 882; and her being "busy unpacking and adjusting" following "recent[] move" in September 2021, Tr. 1067.

Nor has Plaintiff pointed to treating notes of any other provider that reflect that she complained of or was restricted by this limitation.[5] Rather, as the ALJ accurately noted, these records are not supportive of this limitation. See, e.g., Tr. 399 (in November 2018, primary care provider notes "feeling well today"; no complaint of fecal incontinence or frequent use of toilet); Tr. 526, 531 (in November 2018, emergency room provider notes complaint of pain, but no diarrhea or constipation; with physical examination largely normal, Plaintiff discharged as stable); Tr. 904, 908 (at January 2021 follow up with primary care for Crohn's, provider notes "[s]he is feeling well today . . . [n]o new issues"); Tr. 1037, 1045 (report following September 2021 endoscopic biopsies in colon, stomach and esophagus notes normal examination aside from "mild gastritis," with advice to "avoid NSAID medications"); Tr. 1060 (in December 2021, Plaintiff tells mental health provider that she is "grateful now for new [Crohn's] medication as it is working very well"). Indeed, the record reflects that Plaintiff was advised to report "increased

---

[5] Recognizing that the Court's duty in Social Security cases is to ensure a "just outcome," Pelletier v. Sec'y of Health, Educ. & Welfare, 525 F.2d 158, 161 (1st Cir. 1975), I did not rely solely on the dearth of evidence cited by Plaintiff. I performed a complete review of the entirety of this extensive record. Importantly, mindful of Plaintiff's argument, my review included an active search for any evidence ignored by the ALJ suggesting that Plaintiff sought or received treatment for or complained of or reported to any provider what she has claimed on application: the unusually frequent and urgent need to use a bathroom and incidents of fecal accidents or incontinence. I found nothing.

8

bowel movement frequency" to her provider, yet she points to no evidence suggesting that she ever did.  See Tr. 477.  Nor has any source opined that Plaintiff suffers from this limitation.  Thus, this case differs materially from, for example, Sacilowski, where the claimant's treating physician's opinion buttressed the subjective statements regarding absenteeism.  Sacilowski, 959 F.3d at 440-41.

By contrast with her apparent failure ever to mention this serious symptom to any treating source (and contradicting her reports to treating sources of activities like camping and vacationing in Florida), Plaintiff's function report includes her statement she goes outside "not a lot" because "I need to be closed (sic) to a bathroom."  Tr. 312; see Tr. 310 ("can't be far from a bathroom").  At the ALJ's hearing, she testified consistently: "I'm in the bathroom at least four times a day with the Crohn's other than the normal bathroom times," Tr. 87, that these incidents require her to rush to the bathroom to avoid an accident and take ten to twenty minutes, and that accidents/incontinence requiring cleanup happen once a week.  Tr. 92-93.  Critically, Plaintiff's statements in the function report were explicitly presented to the non-examining physician experts.  Tr. 106 (findings include Plaintiff's statement that "can[']t be far from a bathroom . . . all activity depends on how stomach is feeling"); Tr. 113 (same); see Tr. 125 ("MER reviewed no change in status of ulcerative proctitis"); Tr. 131 (same).  Thus, these expert physicians were asked to consider Plaintiff's subjective claim of limitations based on her frequent and urgent need to use the bathroom and made the finding that, despite ongoing IBD symptoms, headache, vertigo, shoulder and knee issues resulting in "some problems," Tr. 110, with her activities of daily living, she nevertheless has retained the ability to function throughout a normal workday, albeit with exertional and postural limitations.  Tr. 109-10, 116-17, 124-25, 130-31.  Therefore,

this is not a case (like Sacilowski) where the non-examining experts were not asked to consider the symptoms that would result in time off-task or absenteeism. Sacilowski, 959 F.3d at 439.

  At bottom, Plaintiff's argument fails because she is simply wrong in asserting that the ALJ did not analyze her "need for regular bathroom breaks." ECF No. 9 at 16 (internal quotation marks omitted). In fact, the ALJ's decision contains a lengthy analysis of Plaintiff's statements about this concern and the related medical record. Tr. 18-22. This analysis demonstrates that he supportably found that, apart from Plaintiff's subjective statements, the record (as summarized above) does not reflect such reports to medical providers nor does it indicate that any provider recommended any restrictions based on such a symptom, but rather demonstrates that the GI symptoms Plaintiff did report improved with treatment and that Plaintiff exhibited stable weight with no significant loss. Tr. 20-21; Nelson v. Berryhill, C.A. No. 16-618-JJM-PAS, 2017 WL 5157237, at *3-4 (D.R.I. Nov. 6, 2017) (no error in ALJ finding medical evidence, including stable weight, worsening only due to medication reduction and improvement with treatment, did not match up to subjective complaints of many unscheduled bathroom breaks). In addition, he found persuasive and relied on the non-examining experts' opinions that Plaintiff was capable of working a normal workday. Tr. 21. Mindful that, as the Commissioner points out, it is Plaintiff's burden to establish the extent of her limitations yet she points to no source opining that she would miss work or be off-task in a way that conflicts with the ALJ's RFC, Mosconas v. Saul, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020); Kellilea F. v. Kijakazi, C.A. No. 21-00410-JJM, 2022 WL 2128625, at *8 (D.R.I. June 14, 2022), I find no error in the ALJ's approach. See McKeage v. Kijakazi, Civil Action No. 21-11683-TSH, 2023 WL 2988746, at *12 (D. Mass. Feb. 8, 2023) (motion to remand denied because, although record reflects, and ALJ accepted, diagnosis of diverticulitis and symptom of

10

diarrhea, only claimant's testimony indicates potentially disabling frequent bathroom use; ALJ appropriately relied on lack of report of this symptom to treating sources, as well as evidence of improvement of GI symptoms with medication and healthy appetite), adopted by Electronic Order (D. Mass. Feb. 28, 2023); Keith S. v. Berryhill, C.A. No. 17-00503-JJM, 2018 WL 6599876, at *7-8 & n.4 (D.R.I. Dec. 17, 2018) (motion to remand denied despite no RFC accommodation for bathroom use because frequent bathroom use was not mentioned to any treating or examining source; "mere presence of such complaints in the record does not evidence functional limitations sufficient to meet Plaintiff's . . . burden"), adopted by Text Order (D.R.I. Jan. 15, 2019).

As an alternative challenge to this aspect of the ALJ's RFC, Plaintiff attacks the ALJ's use of the term "debilitating" to characterize certain of Plaintiff's claims. This argument is equally unavailing. Specifically, the ALJ noted that Plaintiff's "allegations of debilitating pain are not well supported," Tr. 20, and that "the evidence does not support such . . . debilitating frequency [of bathroom use]," Tr. 21. Plaintiff argues that this use of "debilitating" means that the ALJ has failed to follow the law and has somehow exaggerated what the law requires. ECF No. 9 at 14-15. However, read in context, it is crystal clear that the ALJ is using "debilitating" to mean having a significant adverse impact, as a synonym for "potentially disabling" or "work-preclusive," not to set a bar that exceeds the applicable legal standard. Indeed, the ALJ's use of the term is similar to its use by our Circuit Court in Sacilowski, 959 F.3d at 439 n.5 ("answers to . . . medical questionnaires make clear that [claimant's] condition was debilitating even before the Relevant Time Period"). Further, the ALJ's reliance on the non-examining physicians, who possess expertise in Social Security terminology, confirms that the ALJ appropriately applied the

11

law regarding symptom severity. See 20 C.F.R. § 404.1513a(b)(1) (non-examining physicians are "highly qualified and experts in Social Security disability evaluation").

Finally, Plaintiff argues that there is not substantial evidence to support the ALJ's finding that Plaintiff's IBD symptoms ameliorated with treatment to the point where he characterized her as "mostly in remission," Tr. 20. ECF No. 9 at 16. This argument fails because the ALJ did marshal ample evidence to support this finding, including (for example) Plaintiff's primary care physician's 2021 treating records, which consistently reflect that "she is feeling well," overall and specifically with respect to "chronic ulcerative proctitis" ("[o]n Entyvio . . . [d]oing well"), Tr. 1099-1100, 1122-23, as well as the Rhode Island Hospital September 2021 report finding that her colon, stomach and esophagus all were "within normal limits," aside from "mild gastritis," Tr. 1037. Further, while not seen by the ALJ, his finding is corroborated by Plaintiff's post-hearing submission to the Appeals Council, which reflects her report to her primary care physician of normal appetite with no weight loss, no complaints of abdominal pain, no blood in the stool, no diarrhea and no mention of abnormal frequency in the use of the bathroom. Tr. 56.

Having reviewed the entirety of this record, including Plaintiff's subjective statements in the function report and at the hearing, I find that this case differs materially from those on which Plaintiff relies (Dowling and Kimberly F.)[6] in that there is no medical opinion supporting Plaintiff's statements and the ALJ performed a comprehensive analysis of Plaintiff's claims and

---

[6] On reply, Plaintiff asks the Court to consider ten more cases. The problem is that most of them reflect a claimant who, unlike Plaintiff, had established a severe need for frequent and extended bathroom breaks, yet the ALJ in each instance made no findings about frequency or duration and therefore failed properly to develop the RFC. See, e.g., Dickerson v. Comm'r of Soc. Sec., No. 4:18-CV-4578, 2019 WL 7938518, at *4-5 (S.D. Tex. Dec. 9, 2019) (remand required after ALJ made finding that claimant should be given "ready access" to restroom facilities, but failed to specify frequency and duration of breaks in RFC). Other cases involve situations where the ALJ did not discredit but instead completely ignored evidence related to frequency of bathroom use. See, e.g., Durr-Irving v. Colvin, 600 Fed. App'x 998, 1003 (7th Cir. 2015) ("the ALJ recounted [claimant]'s testimony about how frequently she uses the bathroom . . . but said nothing about that testimony when analyzing [claimant]'s impairments"). None of them alters my conclusion.

12

relied on substantial evidence to support his findings. Therefore, I find that the ALJ did not err in failing to include limitations based on the need for frequent, lengthy and urgent bathroom use in his RFC. Based on my own review of this extensive record, I further find a reasonable mind would readily accept the ALJ's decision as more than adequate to support his conclusion. See Purdy, 887 F.3d at 13. Therefore, I recommend that the Court reject Plaintiff's contention and affirm this aspect of the ALJ's decision.

      B.      **ALJ's Step Four and Step Five Determinations**

On reply, Plaintiff appears to have abandoned her mistaken argument that the ALJ erred at Step Four in relying on Plaintiff's last job before she stopped all work, which job the ALJ had found at the hearing would not amount to past relevant work.[7] In light of this concession, which I find to be appropriate as it is clear that the ALJ did not err at Step Four, I recommend that the Court affirm this aspect of the ALJ's decision. Somewhat puzzling then is Plaintiff's persistence in pressing her Step Five argument (which is mooted if the Step Four finding is affirmed). Because Plaintiff's restates her contention that the Court cannot consider an alternative finding at Step Five because an ALJ commits *per se* error, acting contrary to applicable regulations, when he makes such a finding, I pause to recommend that the Court reject it as contrary to precedent in this Court, a persuasive decision in our Circuit and the holdings in other Circuits. See, e.g., Costa v. Kijakazi, No. 22-1890, 2023 WL 7149092 (1st Cir. October 17, 2023) (unpublished slip op. judgment) ("Step Four . . . error was rendered harmless by the alternate findings at Step Five regarding other jobs [claimant] could perform.") (citing cases from Seventh, Ninth, Fifth, Eighth

---

[7] As the Commissioner correctly points out, there is no error because the prior work on which the ALJ actually relied for his finding that Plaintiff could perform her past relevant work as a home health aide was not based on the most recent job, but rather on a pre-onset job she described in her testimony, which had lasted for several years. Tr. 22-23 (referencing, *inter alia*, Tr. 82-86).

and Tenth Circuits); Patrick F. v. Kijakazi, C.A. No. 22-CV-212-MSM-PAS, 2023 WL 6004594, at *1 (D.R.I. July 10, 2023) ("ALJ may make alternative findings at Steps 4 and 5 and an error at Step 4 is harmless if the Step 5 finding is sustained").

      C.      **Appeals Council's Denial of Review**

Plaintiff submitted to the Appeals Council medical records not presented to the ALJ; among those that are "new" (that is, not already submitted to the ALJ) is a CT scan of Plaintiff's brain performed on March 1, 2022, three days before the ALJ issued his decision. Tr. 73-74. Plaintiff points to the finding by the scan reader who observed that it appeared "consistent with hemorrhage, of unknown etiology" and labeled it as "RADCAT4: Priority result," requiring follow up. Tr. 74. Plaintiff contends that the Appeals Council egregiously erred in finding that this scan "does not show a reasonable probability that it would change the outcome of the decision." Tr. 2. Notably, also in the records submitted to the Appeals Council, but not mentioned by Plaintiff, is the follow up – a brain MRI done just two days later (one day prior to the issuance of the ALJ's decision) that rules out hemorrhage ("There is no evidence of acute infract, hemorrhage, mass or mass effect"); by contrast with the CT scan, the follow-up MRI result is labeled "RADCAT2: Routine result."[8] Tr. 72.

The Court need not linger long over this argument. It is well settled that "[i]t is the effects or manifestations of the illness which control the proper outcome of a disability proceeding." Canales ex rel. Pagan v. Astrue, No. CA 07-474 ML, 2009 WL 2059716, at *8 (D.R.I. July 13, 2009); see Keach v. Berryhill, Civil Action No. 17-cv-10133-ADB, 2018 WL 1440316, at *12 (D. Mass. Mar. 22, 2018) ("mere diagnosis of a condition says nothing about the severity of the condition") (internal quotation marks omitted). Here, the ALJ carefully

---

[8] The MRI report instead reflects an observation of a potential abnormality ("most compatible with cavernous malformations"), which is labeled as a "[r]outine result." Tr. 72.

considered the medical evidence and Plaintiff's testimony and statements about her headaches, as well as the opinions of the non-examining physician experts, who noted evidence of "some . . . headaches" and considered it in making their RFC findings. Tr. 110, 117; see Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *4 (D.R.I. Mar. 7, 2022) (no error because ALJ appropriately relied on medical evidence, prior administrative expert findings, and subjective statements, despite EMG diagnosis of neuropathy), adopted by Text Order (D.R.I. Mar. 31, 2022). At Step Two, the ALJ found that Plaintiff had complained of headaches since 2004 without diagnosis, that the headaches seemingly were exacerbated in the recent period by infusions to treat Crohn's, but that the record establishes that this "headache disorder causes no more than minimal functional limitation." Tr. 15.

There is ample support for the ALJ's Step Two finding that, during the relevant period, Plaintiff's headaches did not have more than a minimal effect on her ability to work. E.g., Tr. 79 (Plaintiff's hearing testimony makes no mention of headaches as adversely affecting her ability to work); Tr. 395 (Plaintiff complains of headache but no acute findings on examination, headache possibly attributed to caffeine or sleep); Tr. 434 (headache "mild"); Tr. 669 (headache "improvement" with medication); Tr. 878 (headache "[b]etter" with medication); Tr. 908 (headaches are "quiet now"); Tr. 1100 (headache "quiet"). Indeed, at many of Plaintiff's medical appointments, headache is not mentioned at all. E.g., Tr. 381-85 (at primary care appointment in May 2019, headache on problem list but not mentioned as current complaint); Tr. 724-29 (at primary care appointment in July 2020, headache on problem list but not mentioned as current complaint); Tr. 879-83 (at primary care appointment in June 2021, headache on problem list but not mentioned as current complaint). Plaintiff has not challenged this aspect of the ALJ's decision.

The fact that a diagnosis not previously considered (hemorrhage) was suggested by the CT scan (though ruled out by the follow-up MRI) as a possible explanation of Plaintiff's longstanding but non-severe headaches does not alter the thoroughness of the ALJ's assessment of the "effects or manifestations" of Plaintiff's headaches. See Canales, 2009 WL 2059716, at *8. Thus, I find no egregious error by the Appeals Council and recommend that the ALJ's decision be affirmed.

### D.     Undeveloped Arguments Deemed Waived

Plaintiff presents several other arguments in passing. For example, her brief mentions her testimony that she experiences panic attacks whenever she is in a car. ECF No. 9 at 4, 15. Yet she has not developed this reference into a reason why the ALJ's decision is somehow flawed, particularly with ample evidence to support the discounting of this testimony, including Plaintiff's failure to mention this symptom to the consulting expert psychologist, Tr. 708-12, or in her function report. See Tr. 312. Further, as the ALJ correctly noted, when Plaintiff finally sought mental health treatment from a specialist, she mentioned only anxiety (not panic attacks) while driving; at follow-up appointments, her providers consistently noted Plaintiff's report that "things have been good," and found her mental health to be "stable" with entirely normal mental status examinations. See Tr. 780-83, 1056-67. Similarly, Plaintiff asserts that the ALJ was overly reliant on objective evidence and did not adequately address the impact of some (unspecified) aspect of her complained-of pain, ECF No. 15-16, despite the ALJ's well-developed analysis of her pain allegations and his reliance on the findings of the non-examining experts who took Plaintiff's allegations of pain into consideration. Tr. 106, 125 (analysis of

16

evidence for non-examining experts includes Plaintiff's claim that she "always has stomach pain"; physical RFC includes consideration of "abdominal pain").  Also unexplained is Plaintiff's contention that the ALJ "misassess[ed]" Plaintiff's activities of daily living.  ECF No. 9 at 15.  With a record reflecting a vacation in Florida, Tr. 415; camping, Tr. 724; attending "graduation party when she was on her feet for many hours" (causing leg pain), Tr. 879); doing "a lot of heavy lifting this summer while moving," Tr. 1049 and "busy unpacking" after recent move, Tr. 1066; and caring for family members, e.g., Tr. 1062, it is impossible for the Court to ascertain what the ALJ misassessed and why it might matter.

Such undeveloped arguments are deemed waived and will not be discussed further.  Billy A. v. Kijakazi, C.A. No. 20-536WES, 2022 WL 2668441, at *5 & n.5 (D.R.I. Jan. 25, 2022) ("contention . . . with no supporting argument is deemed waived"), adopted by Text Order (D.R.I. Feb. 23, 2022); Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021) ("throw-in arguments left for the Court to sort out on its own and, as such, are deemed waived") (citing Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005)).

**IV.   Conclusion**

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be GRANTED.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See

Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 30, 2024